CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

February 18, 2020

LETTER TO THE PARTIES

RE: *Latisha G. v. Commissioner, Social Security Administration*
Civil No. DLB-19-638

Dear Plaintiff and Counsel:

On March 5, 2019, Plaintiff Latisha G., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Supplemental Security Income. ECF 1. Plaintiff did not file a motion for summary judgment before the filing deadline, but I have considered the SSA's motion for summary judgment, ECF 16, and Plaintiff's stated cause of action, ECF 1 ("I have PTSD.").[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny the SSA's motion and remand the case to the SSA for further evaluation pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

After a previous denial of benefits in 2016, Tr. 82-94, Plaintiff filed her claim for benefits on July 19, 2016, alleging a disability onset date of April 26, 2016,[2] Tr. 181-89. Her claim was denied initially and on reconsideration. Tr. 102-05, 109-10. An Administrative Law Judge ("ALJ") held a hearing on May 31, 2018, at which Plaintiff was represented by counsel. Tr. 28-51. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-23. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "major depressive disorder; and posttraumatic stress disorder (PTSD)." Tr. 15. Despite this impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: performing simple and routine tasks involving no written

---

[1] After the SSA filed its motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising her of the potential consequences of failing to oppose the dispositive motion. ECF 19. Plaintiff did not file a response.

[2] Plaintiff subsequently amended her alleged onset date to July 19, 2016. Tr. 12, 202.

> instructions; never performing work involving a production-rate or pace; never interacting with the public; occasionally interacting with coworkers; and performing work in a low-stress environment consisting of occasional decisionmaking and occasional changes in the work setting. Due to problems with experiencing flashbacks, the claimant would be off task 10 percent of the workday.

Tr. 18. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff had no past relevant work, but could perform other jobs existing in significant numbers in the national economy. Tr. 21-23. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 23.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings).

The ALJ proceeded in accordance with applicable law at the first two steps of the sequential evaluation. The ALJ ruled in Plaintiff's favor at step one, and determined that she had not engaged in substantial gainful activity since her application date. Tr. 15; *see* 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Plaintiff claimed prevented her from working, finding her major depressive disorder and PTSD to be severe. Tr. 15; *see* 20 C.F.R. § 416.920(a)(4)(ii). The ALJ determined that Plaintiff's gastroesophageal reflux disease was not a severe impairment and that her alleged knee pain and dislocations were not medically determinable impairments. Tr. 16.

At step three, the ALJ determined that Plaintiff's impairment did not meet or medically equal the criteria of any listings. Tr. 16-18; *see* 20 C.F.R. § 416.920(a)(4)(iii). In particular, the ALJ identified and considered Listings 12.04 (depressive, bipolar, and related disorders) and 12.15 (trauma- and sensor-related disorders). The ALJ had to apply the special technique applicable to mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00 (2018). The technique requires analysis of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). Listings 12.04 and 12.15 are satisfied by meeting either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A)(2). Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). A claimant must show extreme limitation in one area, or marked limitation in two areas, to be deemed to have met the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B) (2018).

Here, the ALJ assigned a rating to the "paragraph B criteria" and found that Plaintiff had a "moderate" limitation in all four functional areas, including the ability to concentrate, persist, or maintain pace. Tr. 16-17. Because Plaintiff did not have an extreme limitation in one area, or marked limitation in two areas, the ALJ found that Plaintiff did not satisfy the "paragraph B" criteria. Tr. 18. The ALJ also found that Plaintiff did not satisfy the "paragraph C" criteria because the record lacks evidence of hospitalizations for mental health issues or marginal adjustment. *Id.* Therefore, the ALJ found that Plaintiff did not meet or equal a listing.

The ALJ continued with the sequential evaluation and considered, in assessing Plaintiff's RFC, the extent to which her impairments limited her ability to work. In her analysis, the ALJ summarized Plaintiff's subjective complaints from her hearing testimony and provided a review of her medical records. Tr. 19-21. The ALJ noted that Plaintiff experienced a sexual assault and a brutal physical battery, that she experienced flashbacks, that she had seen her psychotherapist or psychiatrist "every one to two weeks" since 2016, and that her medications included sertraline and trazodone. Tr. 19. The ALJ also noted that "[w]hile the record supports the presence of the alleged impairments, the claimant has not submitted enough medical evidence to corroborate the intensity or effects of [her] impairments." Tr. 20. The ALJ discussed Plaintiff's psychological consultative examination in November 2016, including the examiner's observation that Plaintiff was guarded, preoccupied with paranoid ideas, and "exhibited a depressed an irritable mood with a flat affect." *Id.* (citing Exh. B3F). The ALJ also noted that the examiner could not assess Plaintiff's hygiene because Plaintiff would not remove her hood, and that Plaintiff refused to perform "Serial Sevens." *Id.* The ALJ considered the opinions of the State agency psychological consultants, Tr. 20-21, and the previous ALJ's RFC assessment, Tr. 21; *see* Acquiescence Ruling 00-1(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) (discussing an ALJ's consideration of prior findings). The ALJ concluded that the evidence showed "greater functioning than the claimant has alleged, little evidence of treatment overall, and evidence of noncooperation or exaggeration of symptoms." Tr. 21.

The ALJ's decision does not comport with the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In that case, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 638. That functional area "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (2018). The Social Security regulations define a "moderate limitation" as the "fair" ability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2). In comparison, a "mild limitation" reflects a slightly limited functional ability, and a "marked limitation" reflects a seriously limited functional ability. *Id.*

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the

hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ's analysis of Plaintiff's ability to maintain concentration, persistence, or pace stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. In the Function Report, the claimant indicated difficulties in concentrating, paying attention, and completing tasks due to psychologically based symptoms. She stated that she is unable to manage her finances and that she is unable to drive a motor vehicle, which reflect significant deficits in and [sic] concentration. The allegations at the hearing are consistent with those stated in the Disability Report. At the November 2016 psychological consultative examination, the claimant was not oriented, and she demonstrated diminished concentration, although the examiner was not able to assess all aspects of the claimant's concentration due to noncooperation. On the [mini-mental status examination], the claimant achieved a score of 13/30. The psychotherapy notes reflect few to no positive mental status findings for attention, orientation, or alertness, which suggests that her deficits in this broad area of functioning are no more than moderate in degree.

Tr. 17 (internal citations omitted). In the RFC assessment, the ALJ gave "great weight" to the State agency consultants' opinions that Plaintiff could "understand, remember, and carry out simple instructions and tasks with reduced contact with others in the workplace and tolerance of only simple workplace changes." Tr. 20-21; *see* Tr. 60, 74. However, the ALJ found that the consultants "did not adequately consider the claimant's subjective complaints of difficulties with reading, interacting with the public, and remaining on task, which are supported by her testimony and her consistently abnormal mood at psychotherapy." Therefore, the ALJ found that Plaintiff was "more limited" than the consultants opined. Tr. 21; *see also* ECF 16-1 at 9-10 (Commissioner explaining that "[t]he ALJ also noted that [Plaintiff's] subjective complaints of difficulties with reading, interacting with the public, and remaining on tasks, supported greater limitations than in the State agency consultants' opinions."). In discussing the previous SSA decision, the ALJ found that the evidence supported "greater restrictions in working with the public, staying on task, and reading instructions" than the previous ALJ included. Tr. 21.

The prior ALJ found that Plaintiff had the following nonexertional limitations:

> The claimant is limited to performing simple, routine, repetitive tasks, but not those done at a produce rate pace, as in an assembly line, where each task must be

> completed within a fixed time. The claimant is limited to making simple work-related decisions with only occasional changes in the routine work setting. The claimant is limited to occasional interaction with supervisors, coworkers, and the public. Time off-task during the workday can be accommodated by normal breaks.

Tr. 88. Despite explaining that Plaintiff required more limitations than included in the previous ALJ's RFC assessment or the opinions of the State agency consultants, the ALJ did not explain what those limitations were or how they accommodated Plaintiff's difficulties with concentration, persistence, and pace. The ALJ similarly did not explain why Plaintiff's difficulties with concentration, persistence, and pace did not affect her ability to sustain an eight-hour workday. The restriction to "simple, routine tasks" is directly analogous to the limitations deemed insufficient in *Mascio*. 780 F.3d at 638 (quoting *Winschel*, 631 F.3d at 1180) (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace). In the absence of any additional limitation to accommodate Plaintiff's moderate difficulties maintaining concentration, persistence, or pace, *Mascio* requires that the ALJ explain why no such limitation is required. *Mascio*, 780 F.3d at 638. The ALJ has not provided such an explanation here.

Although the Commissioner did not defend the ALJ's decision based on her inclusion of RFC limitations to "never performing work involving a production-rate or pace" and "be[ing] off task 10 percent of the workday," Tr. 18, those arguments would be unpersuasive. First, the Fourth Circuit recently remanded a case for, among other reasons, a failure to define "production rate" and "demand pace." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019); *see also Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. Mar. 8, 2019) (unpublished) (remanding for ALJ's failure to define "non-production oriented work setting"). The term "production-rate or pace," used in this case, is directly analogous to the terms deemed problematic in *Thomas*.

Second, the ALJ explained that she included the off-task limitation "[d]ue to problems experiencing flashbacks." Tr. 18. Although the ALJ noted that "[t]he claimant's attorney argued [at the hearing] that the claimant would be off task 20 percent of the time due to her mental symptoms," Tr. 19, the ALJ did not cite to the record to support her finding that Plaintiff would be off task ten percent of the workday because of flashbacks. The ALJ cited to Plaintiff's hearing testimony for her conclusion that the evidence supported "greater restrictions in . . . staying on task" than the previous ALJ's RFC assessment. Tr. 21. At the hearing, however, Plaintiff testified that she had daily flashbacks that lasted up to an hour. Tr. 45. Similarly, the ALJ did not explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, she could remain on task for at least ninety percent of an eight-hour workday. *See Williams v. Berryhill*, Civil No. TMD-17-1083, 2018 WL 3092273, at *6 (D. Md. June 22, 2018).

In light of the ALJ's inadequate RFC assessment, I need not address whether the remainder of the ALJ's analysis complied with the relevant legal standards. In ordering remand for further consideration by the SSA, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

*Latisha G. v. Commissioner, Social Security Administration*
Civil No. DLB-19-638
February 18, 2020
Page 6

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge